IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELEANOR REED,

    Plaintiff,

  v.

AVIS BUDGET GROUP, INC.,

    Defendant.
_____/

No. C 09-01480 CW

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 27)

Plaintiff Eleanor Reed alleges that, in violation of the California Fair Employment and Housing Act (FEHA), Defendant Avis Budget Group, Inc., retaliated against her for seeking a reasonable accommodation and complaining about disability and race discrimination. Defendant moves for summary judgment or, in the alternative, partial summary judgment. Plaintiff opposes the motion. Defendant objects to evidence offered by Plaintiff in support of her opposition. The motion was heard on November 18, 2010. Having considered oral argument and the papers submitted by the parties, the Court GRANTS Defendant's motion for summary judgment.

BACKGROUND

Defendant employed Plaintiff as a customer service representative (CSR) at its San Francisco International Airport (SFO) rental car concession.

On June 19, 2006, Plaintiff asked Defendant to accommodate her

depression and bipolar disorder by permitting her to work a six-hour day.  To support her request, she gave District Manager Matt Spain, her supervisor, a note from her doctor.  That same day, Plaintiff was placed on unpaid leave, which continued until November, 2006.

On November 16, 2006, Defendant held a meeting held to discuss accommodations for Plaintiff's disabilities.  Among others, the meeting was attended by Plaintiff; Erinn Height, Defendant's Human Resources Manager for Northern California; Constance Stephens, Defendant's Airport Manager for SFO; and John Sheperdson, Defendant's Regional Manager for the Northwest Region.  Plaintiff was offered a modified work schedule, consisting of four-hour shifts, four days per week.  Plaintiff objected to this arrangement, complaining that these were not six-hour shifts, as she had requested, and that this limited schedule would cause her to lose her medical benefits.  According to Height's notes from the meeting, Plaintiff expressed her belief that she was being discriminated against based on her "race, color and disability." Rogers Decl., Ex. 1, at ABG-00058.  Height also noted that Plaintiff stated that she had "consulted the DFEH [Department of Fair Employment and Housing]."  Id. at ABG-00059.  Plaintiff nevertheless agreed to the schedule, stating that she would address her loss of benefits after she returned to work.  Plaintiff resumed her duties on November 18, 2006.

In December, 2006, Defendant notified Plaintiff that she would be laid off effective December 31, 2006.  Because Defendant had decided to close two of its locations in downtown San Francisco,

2

1 high-seniority employees displaced Plaintiff and three other CSRs
2 working at SFO.

3   On or about March 19, 2007, Plaintiff filed a complaint with
4 the California DFEH, charging Defendant with discrimination based
5 on race and disability.  Specifically, she claimed that Defendant
6 failed to accommodate her disability and engage in the interactive
7 process.  On March 20, 2007, Bess McClain, a consultant for the
8 DFEH, telephoned Height and informed her of Plaintiff's DFEH
9 complaint.  McClain also sent Height a Notice of Filing of
10 Discrimination Complaint, dated March 20, 2007, which Height
11 received.  Height also received a letter, dated March 20, 2007,
12 entitled "Notice of Case Closure," stating that the DFEH had
13 recommended that Plaintiff's case be referred to the United States
14 Equal Employment Opportunity Commission (EEOC).  Height Decl. ¶ 5
15 and Ex. B.  Height claimed that she did not begin investigating
16 Plaintiff's DFEH complaint because she believed that the EEOC would
17 contact her at a later date.  As a result, Height stated, she did
18 not inform Spain or Stephens of Plaintiff's filing.  McClain
19 telephoned Height on May 14, June 19, and June 25, 2007 regarding
20 Plaintiff's DFEH complaint.

21   In June, 2007, Defendant decided to recall Plaintiff and two
22 of the employees it laid off in December.  On June 12, 2007, Spain
23 sent a letter to Plaintiff notifying her of her right to return to
24 work.  The letter stated that, to exercise her recall rights,
25 Plaintiff had to "respond to Constance Stephens at [Stephens's
26 mobile phone number] within three (3) days after receipt of this
27 letter and report to work no later than seven (7) days after

28

3

receipt of notice." Spain Decl., Ex. A.  The notice stated that these terms were based on the collective bargaining agreement (CBA) that governed Plaintiff's employment.  On June 15, Spain telephoned Plaintiff and left her a voicemail message regarding the recall.

On June 18, Plaintiff contacted Defendant's SFO location and spoke to Denise McDonald, who was the lead CSR working that day. Plaintiff asked to speak to Spain, who apparently was not available at that time.  She then asked McDonald to tell Spain that she wanted to speak to him.  Plaintiff claims that Spain did not call her back.  Spain, however, stated that he believes he called Plaintiff the next day, but only reached her voicemail.  He did not indicate whether he left a message.

On June 21, Plaintiff received Spain's letter requiring her to respond by June 24.  During this period, Stephens was in New Jersey attending a conference of Defendant's managers.  She had her mobile phone during her trip.

On June 22, Plaintiff again called the SFO location and spoke to McDonald.  Plaintiff told McDonald that she was responding to the recall letter and asked McDonald to communicate this information to Stephens and Spain.  In her declaration, Plaintiff stated that she left a message on Stephens' office voicemail, indicating that she wanted to return to work.  However, when asked at her deposition about the calls she made around this period, Plaintiff did not identify this message, although she stated that

4

she could not remember all the calls she had made.[1]

On June 24, Plaintiff spoke to Juan Sandoval, a CSR who was apparently working at Defendant's SFO location that day. Reed Decl. ¶ 6. She told Sandoval that she was answering the recall letter and wanted to return to work.

On the morning of June 25,[2] Plaintiff reached Stephens on her office line and stated that she wanted to return to work. Stephens screamed that Plaintiff should have contacted her, not McDonald, and stated that she did not receive any messages from Plaintiff. When Stephens asked why Plaintiff did not contact her at her mobile phone number as instructed in the letter, Plaintiff responded that she did not read the entire letter. Plaintiff then phoned McDonald, who stated that she gave Stephens Plaintiff's June 22 message. Later that day, Plaintiff phoned Spain, who stated that she had forfeited her seniority and recall rights because she did not contact Stephens within the required time period. To follow up on this conversation, Spain sent Plaintiff a letter confirming that she had forfeited her recall rights.

On June 26, Height emailed Spain and Stephens to inquire as to whether Plaintiff had contacted either of them during the three-day

---

[1] Defendant asserts that Plaintiff's statement that she phoned Stephens and left her a voicemail is contrary to what Plaintiff stated at her deposition. At her deposition, Plaintiff stated that she was not sure whether she had made other calls. The declaration need not be disregarded because it does not directly contradict Plaintiff's deposition testimony. Burrell v. Star Nursery, Inc., 170 F.3d 951, 954 (9th Cir. 1999).

[2] Defendant's witnesses claim that these conversations took place on June 26. For the purposes of this motion, the Court takes Plaintiff's account of these facts as true.

5

period. Both Spain and Stephens claimed that Plaintiff had not.

Spain stated that he learned of Plaintiff's March, 2007 DFEH complaint sometime in July, 2007; Stephens claimed that she learned of it "a few months after [Plaintiff] lost her recall rights." Stephens Decl. ¶ 16.

On March 18, 2008, the DFEH issued an accusation against Defendant based on the allegations contained in Plaintiff's March, 2007 complaint to that agency. Under California Government Code section 12930(h), this accusation was to be prosecuted before the California Fair Employment and Housing Commission (FEHC).[3]

In June, 2008, Plaintiff filed a second complaint with the DFEH, charging Defendant with unlawful retaliation for complaining about discrimination. On September 26, 2008, the DFEH issued an amended accusation, which included Plaintiff's complaint for retaliation.

On February 3, 2009, the DFEH filed a second amended accusation to eliminate the unlawful retaliation charge. Prior to this date, Plaintiff apparently retained the attorney representing her in this action and sought to litigate her retaliation complaint in federal court. In March, 2009, Plaintiff filed a lawsuit in San Francisco County Superior Court, pleading one claim for retaliation

---

[3] Defendant asks the Court to take judicial notice of the proceedings before the FEHC in In the Matter of the Accusation of the Department of Fair Employment and Housing vs. Avis Group, Inc., a Delaware Corporation, Respondent, Eleanor Reed, Complainant, Case No. E200607-A-0811-mpe, and records of those proceedings filed with Defendant's motion for summary judgment. Because Plaintiff does not oppose Defendant's request and the existence of these proceedings and documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," the Court GRANTS Defendant's request.

6

1 in violation of FEHA.  Defendant removed the action to federal
2 court in April, 2009.

3 　　　In May and June, 2009, an administrative law judge for the
4 FEHC held proceedings on the DFEH's accusation against Defendant.
5 On October 19, 2010, the FEHC issued a final decision on the
6 matter.  It concluded that Defendant failed to provide Plaintiff
7 with a reasonable accommodation, failed to engage in the
8 interactive process, made unlawful inquiries about her
9 disabilities, subjected her to disparate treatment on the basis of
10 her disabilities and failed to take steps to prevent
11 discrimination.

## LEGAL STANDARD

13 　　　Summary judgment is properly granted when no genuine and
14 disputed issues of material fact remain, and when, viewing the
15 evidence most favorably to the non-moving party, the movant is
16 clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
17 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
18 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
19 1987).

20 　　　The moving party bears the burden of showing that there is no
21 material factual dispute.  Therefore, the court must regard as true
22 the opposing party's evidence, if supported by affidavits or other
23 evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815
24 F.2d at 1289.  The court must draw all reasonable inferences in
25 favor of the party against whom summary judgment is sought.
26 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
27 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

7

1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

## DISCUSSION

In her complaint, Plaintiff alleges that Defendant retaliated against her for "seeking reasonable accommodation of her disabilities and complaining of disability and race discrimination." Compl. ¶ 15. Defendant argues that, based on the FEHC proceedings, either the doctrine of res judicata or collateral estoppel precludes Plaintiff's retaliation claim to the extent that it is based on her request for a reasonable accommodation in June, 2006. Even if it were not so precluded, Defendant asserts that Plaintiff fails to proffer any evidence that her accommodation request led to the alleged adverse action. Plaintiff does not assert in her opposition to Defendant's motion for summary judgment that her retaliation claim is based on her request for an accommodation; indeed, her chronology of facts makes no mention of her June, 2006 request. See Opp'n 5. And, at the hearing on Defendant's motion, Plaintiff represented that her case rests on

9

her protests about discrimination at the November 16, 2006 meeting and the filing of her DFEH complaint in March, 2007. Accordingly, because Plaintiff represents that she seeks relief based only on these two instances of protected activity, summary judgment is granted on her retaliation claim to the extent it rests on her request for a reasonable accommodation. Below, the Court considers her claim only insofar as it is based on her complaints of discrimination.

Claims for retaliation under FEHA are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie case of retaliation, a plaintiff must "show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Id. at 1041. Once a plaintiff establishes a prima facie case, a presumption of retaliatory intent arises. See id. at 1042. To overcome this presumption, the defendant must come forward with a legitimate, non-retaliatory reason for the employment decision. Id. If the defendant provides that explanation, the presumption disappears and the plaintiff must demonstrate that the defendant acted with retaliatory intent. See id.

To survive summary judgment, a plaintiff must then introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for retaliation. A plaintiff may rely on the same evidence used to

establish a prima facie case or put forth additional evidence. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994). However, "in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of [retaliation] under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Wallis, 26 F.3d at 890.

Plaintiffs can provide additional evidence of "pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful [retaliation] more likely motivated the employer." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (citation and internal quotation marks omitted). When plaintiffs present indirect evidence that the proffered explanation is a pretext for retaliation, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'" EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)). When plaintiffs proffer direct evidence that the defendant's explanation is a pretext for retaliation, "very little evidence" is required to avoid summary judgment. See Boeing, 577 F.3d at 1049.

Defendant does not dispute that Plaintiff engaged in protected activity by complaining about discrimination or suffered an adverse employment action when it terminated her recall rights. However, Defendant asserts that Plaintiff fails to demonstrate a causal link

11

between any protected activity and the forfeiture of her recall rights.

Plaintiff does not raise a genuine issue of material fact concerning whether Defendant retaliated against her for filing her a DFEH complaint in March, 2007.  Defendant contends that Spain and Stephens made the decision to terminate Plaintiff's right to return to work, and Plaintiff does not offer any contrary evidence.  And although Height knew of the March, 2007 DFEH complaint at the time Plaintiff forfeited her recall rights, Plaintiff offers no evidence that either Spain or Stephens were also aware of it or that Height directed them to prevent Plaintiff from returning to work.  Plaintiff cannot establish a causal link between her complaint to the DFEH and Spain and Stephens's alleged retaliation without evidence that they knew that she had filed it, see Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 70 (2000) (citing Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)), or that Height instructed them to take the adverse action because of it.

Plaintiff asserts that, even though the November 16, 2006 meeting was not proximate in time to the adverse employment action, a triable issue nonetheless exists because the recall was "the first opportunity" for Defendant to retaliate for her complaints at that meeting.  Opp'n 6.  This argument is not without legal support.  In Porter v. California Department of Corrections, the plaintiff complained she was sexually harassed by a co-worker who, at the time, held the same position as she did.  419 F.3d 885, 888-89 (9th Cir. 2005).  Approximately two years later, that co-worker

12

was promoted to a position in which he handled vacation requests and personnel assignments. Id. at 889. The plaintiff alleged that, after he was elevated, the co-worker retaliated against her by refusing to grant vacation time and rejecting or cancelling her transfer requests. Id. The Ninth Circuit concluded that the delay between the plaintiff's protected activities and the purported adverse actions did not preclude a finding of causation because the alleged retaliator did not have an opportunity to retaliate sooner. Id. at 895 (citing Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 752 n.4 (9th Cir. 2001); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). In addition to providing a valid reason for the apparent lack of temporal proximity, the plaintiff proffered evidence to suggest the existence of a retaliatory motive. Porter, 419 F.3d at 895.

Plaintiff's case is not analogous to Porter. Here, Defendant had an opportunity before June, 2007 to retaliate against Plaintiff for her November, 2006 complaints. Plaintiff worked for Defendant for over a month following the November 16, 2006 meeting. Further, Defendant could have retaliated by deciding not to recall Plaintiff, in violation of her rights under the CBA. And, unlike Porter, Plaintiff offers no other evidence to support an inference of a retaliatory motive. Stephens was the only decision-maker present at the November 16, 2006 meeting. However, the record does not suggest that, in June, 2007, Stephens harbored retaliatory intent based on Plaintiff's comments or that she even remembered them.

Even if Plaintiff made out her prima facie case, Defendant

13

maintains that it prevented her from returning to work because she failed to satisfy the requirements of the CBA. It did not want to create precedent in a unionized workplace that it excuses employees who do not follow recall instructions. Nor did it wish to risk a grievance from another employee who did follow the rules but was disadvantaged by Defendant's excusing Plaintiff from doing so. Because it offers legitimate, non-retaliatory reasons for its action, the burden shifts to Plaintiff to offer evidence that Defendant's reasons were pretextual. She fails to do so.

Plaintiff maintains that the CBA did not require a response to a particular phone number. However, the CBA did not prevent Defendant from designating the manner in which Plaintiff must respond. See Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am., 245 F.3d 601, 606 (6th Cir. 2001) (stating that management retains discretion over matters not addressed in a CBA). Plaintiff does not dispute that she did not follow the instructions contained in the letter.

Plaintiff also asserts that Height's email to Spain and Stephens is evidence of pretext because it "betrays an awareness that Ms. Reed had attempted to call and that she had complained of discrimination in the past." Opp'n 7. However, it is not clear how Height's inquiry into whether Spain or Stephens had conversations with Plaintiff demonstrates Height's awareness that Plaintiff had called either of them. Plaintiff points to no evidence that, prior to sending the email to Spain and Stephens, Height was aware of her calls. Further, Defendant does not dispute that Height knew of Plaintiff's protected activities. But as noted

14

above, Spain and Stephens apparently were the relevant decision-makers, and there is no evidence that Height caused Plaintiff to lose her recall rights.

Accordingly, summary judgment is warranted on Plaintiff's retaliation claim. She fails to make out her prima facie case and, even if she did, Defendant provides legitimate, non-retaliatory reasons and Plaintiff does not provide evidence of pretext. Because her substantive claim does not survive summary judgment, the Court need not consider the parties' arguments concerning her entitlement to punitive damages. To the extent the Court relied on evidence to which Defendant objected, those objections are overruled as moot.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment in its favor on Plaintiff's retaliation claim. (Docket No. 27.)

The Clerk shall enter judgment and close the file. Defendant shall recover costs from Plaintiff.

IT IS SO ORDERED.

Dated: 12/17/2010

CLAUDIA WILKEN
United States District Judge

15